## GLOVER v. DUBNER, et al.

No. 72-C-6907.

Circuit Court, Palm Beach County.

September 4, 1974.

Tylander, DeClaire, Becker & Van Kleek, Boca Raton, for the plaintiff.

Greene, Greene, Smith & Davenport, Jacksonville, for the defendant Dubner.

Kirk Sullivan, West Palm Beach, and Scott & Tilton, Jensen Beach, for the defendant Johnson.

LEWIS KAPNER, Circuit Judge.

*Final judgment:* In the summer of 1974 defendant-Dubner, on behalf of "a Florida corporation to be formed" entered into a contract whereby plaintiff-Glover would sell, and defendant-Dubner — or "a Florida corporation to be formed" — would buy, a certain parcel of land for $295,000. Dubner placed $10,000 in cash with defendant-Johnson, the broker on the deal; an additional $19,500 was to have been deposited upon "seller's acceptance," but this was not actually deposited.

Dubner ultimately declined to go through with the deal, citing certain misrepresentations made to him concerning the property. The court, however, finds that no such misrepresentations were made, and the breach of the contract was on the part of Dubner, or "a Florida corporation to be formed."

Dubner has raised other defenses to the contract and they are discussed and determined as follows —

## I

### *Validity of the liquidated damages clause*

The required deposit was $29,500, or 10% of the purchase price, only half of which is claimed by plaintiff. This deposit was to be forfeited in the event of breach by the buyer. Such a clause is

proper and lawful as liquidated damages in a real estate contract because actual damages are not readily ascertainable at the time a contract of this type is drawn. Hutchison v. Tompkins, (Sup. Ct. 1972) 259 So.2d 129. In *Hutchison,* the court held that equity would relieve a forfeiture of liquidated damages if such forfeiture appears unconscionable in light of the circumstances existing at the time of the breach. (Actually, according to the example used by the Supreme Court, circumstances existing subsequent to the breach should also be considered.)

In the case sub judice it is true that the plaintiff ultimately sold the property for the same amount as in the Dubner contract, and, when considered along with an additional parcel, $9,000 higher than that amount. However, the *Hutchison* rule does not require the forfeiture to be set aside if it is *higher* than the actual damages, but only if "it appears unconscionable in light of the circumstances." Considering the circumstances of the breach, the value of the land, the uncertainties of the market, and the extra effort and expenses required to sell the land to another buyer, the court finds the forfeiture to be proper. Glover would be entitled to 50% of the forfeiture, or $14,750.

## II

### *Is defendant-Dubner liable individually?*

Johnson prepared the contract and submitted it to Glover for his acceptance and signature. Glover signed the contract and sent it to Dubner who in turn signed it as follows —

> "A Florida corporation to be formed
> by Harold H. Dubner
> as nominee or assignee"

Thereupon Dubner returned it to Glover who gave it to his lawyer with instructions to proceed with the closing.

Dubner now contends that he has no personal liability since he signed the contract on behalf of "a Florida corporation to be formed."

As a general rule one signing on behalf of a non-existent principal is personally liable. The reason for this rule is that an agent assuming to contract for a principal must make a contract binding upon some principal, or else he himself will be held liable. I. W. Phillips & Co. v. Hall, (Sup. Ct. 1930) 128 So. 635. However, this rule does not apply where the plaintiff has knowledge of the non-existence of the principal. Akel v. Dooley, (2nd DCA, 1966) 185 So.2d 491; Hunt v. Adams, (Sup. Ct. 1933) 149 So. 24; Bryce v. Bull, (Sup. Ct. 1932) 143 So. 409; Brown v. Smith, (CCA 2nd Circuit

(Conn., 1934) ) 73 F. 2d 524 (opinion by Augustus Hand interpreting Florida law on this subject). Since the contract clearly shows the non-existence of the principal for which Dubner purportedly acted, plaintiff must be held to knowledge of the non-existence of that principal.

Plaintiff has presented the case of Bean v. Harris, (3rd DCA, 1968) 212 So.2d 364, which appears to hold that something more than knowledge is required. The basis for this appearance is the appellate court's conclusion that there was "an absence of evidence that *plaintiff agreed* to look to a corporation to be formed rather than to the contracting individuals for payments," (emphasis added) and the quotation from defendant's statement of the issue — "Whether defendants can, as a matter of law, be held personally responsible under a contract made with plaintiffs for the benefit of a corporation not yet in existence where there is testimony that plaintiff knew that such corporation was to be formed at a date in the future."

*Bean* does not elaborate further on the factual basis of its holding, but the facts of that case are set out in Harris v. Bean, (3rd DCA, 1966) 182 So.2d 464, as follows —

> "At the time of this agreement and at the time of the filing of the first complaint in this cause, plaintiff-appellant believed that Bean was acting individually. Upon the taking of Bean's deposition, it was learned that Bean was acting as a partner for himself and the defendant-appellee, Geldbart."

Thus, *Harris* does not contradict Akel v. Dooley and the other cited cases which unequivocally hold that individual responsibility will not lie where the contractee has knowledge of the non-existence of the principal.

In any event, the court is of the opinion that the weight of the evidence shows that defendant intended to act as an agent and adequately communicated this intention to Glover.

Nevertheless, Dubner is not completely relieved of liability on the deposit of $10,000 or the additional sum of $19,500, as discussed below.

## III

*Liability of Johnson to Glover and liability of Dubner to Johnson*

The fact that Dubner assumed no personal liability for the purchase of this property under the contract does not end the matter — because of the deposit feature of the contract. Dubner may not

have assumed personal liability to purchase the land but he did create an obligation to Glover under paragraph 11 of the contract—

> *"Employment of agent—fee—disposition of deposit—* . . . if the said Buyer fails to perform the covenant herein contained within the time specified, and the Seller elects not to require a specific performance thereof, or sue for damages, the aforesaid deposit or deposits made by the Buyer may be forfeited as liquidated damages . . . and one-half thereof shall be retained by or paid to said Agent and the remainder to the Seller . . ."

This contract was accepted by the seller when he, the seller, signed and returned the contract on July 5, 1972, thus creating the obligation on the part of Dubner to deposit an additional $19,500. Although Dubner assumed no individual obligation to *purchase* the property under the contract, for the reasons stated above, he did assume an obligation to comply with the *deposit provision of the contract*. To hold otherwise would make this contract, or any similar contract completely invalid, because of lack of mutuality, a consequence clearly not intended by Akel v. Dooley and the other cases above cited. A consequence not intended by the parties to this contract, either.

The obligation to purchase the property was a *future* obligation and the plaintiff is held to the clear intent of Dubner that obligation would be assumed by a principal other than himself which was not yet in existence. The obligation to submit and forfeit the deposit of $29,500 was a *present* obligation which could not possibly be performed by "a Florida corporation to be formed" and must, of necessity, have been performed by Dubner himself. "An agent assuming to contract for a principal must make a contract binding upon some principal, or he himself is liable." I. W. Phillips & Co. v. Hall, supra. Indeed, this deposit was a precondition to Glover assuming any obligation on his part and there is no indication at all that Glover was put on notice that the deposit was to have been placed by someone other than Dubner. The rule limiting liability of one signing for a non-existent principal applies only where the contractee has knowledge that the contractor is obligating someone other than himself. By the language in the contract itself, Dubner represented that he had deposited the additional $19,500, which sum was subject to forfeiture in the event of breach. Permitting a buyer to avoid liability on the deposit in such circumstances would encourage fraud and misrepresentation. See 7 Fla. Jur., *Corporations*, §45. In commenting on an analogous situation, the Florida Supreme Court, in I. W. Phillips v. Hall, supra, said —

> "We cannot presume that the parties who signed the note in the instant case did not contemplate the creation of a legal

obligation, capable of enforcement, and, if the obligation does not bind the Methodist Episcopal Church South, La Belle, Florida, as a legal entity, the liability must rest on the individuals who actually participated in the making of the contract."

Similarly, the court in Hunt v. Adams, supra, holding the defendants *not* personally liable, said —

"It is plainly apparent from the declaration and its exhibit considered as a whole that, in signing the written agreement sued upon, neither defendant Adams nor his associates as members of the First Methodist Church of Tampa, Fla., intended to assume, nor did in contemplation of law assume, any personal liability on the contract entered into by plaintiffs, as architects, with the Methodist Church as an unincorporated religious society. The church as such, an unincorporated religious society, was a known principal, concerning whose ability in law to make a legally enforceable agreement of this nature through its building committee the plaintiffs must have been fully informed from what appeared on the face of the writing itself. In view of the known facts, plaintiffs are presumed to have yielded to what was obviously intended as a conditional limitation on the legal effect of the writing accepted."

In the case sub judice, while plaintiff may be presumed to have accepted defendant's conditional liability as to his future obligation, there is nothing in the record to indicate a similar presumption with respect to his liability for the $10,000 actually deposited or the additional $19,500 represented to have been deposited.

An examination of the cases cited herein discloses that those cases which hold the signer to be personally liable involved executory contracts (e.g., future professional services in exchange for future payments — Hunt v. Adams, supra) as opposed to partially executed contracts (e.g., money actually lent in exchange for promissory notes — I. W. Phillips Co. v. Hall, supra). In fact, of all the cases cited, only one, *I. W. Phillips*, is on point with the instant case, involving both knowledge of the non-existence of the principal and partial execution of the contract, and that case held the signer to be personally liable.

Under the terms of the contract, it was Johnson's obligation, as broker, to obtain this deposit and hold it in escrow. He failed to obtain the additional $19,500 and he shall be liable to plaintiff to the same extent that Dubner is liable. Johnson has filed a cross-complaint against Dubner for this additional amount and Johnson

shall be entitled to a judgment against Dubner to the extent of his liability, which is 50% of $29,500 or $14,750.

The court has considered the other points raised by defendants and finds them to be without merit.

It is thereupon ordered that plaintiff-Glover shall be granted a judgment in the amount of $14,750 against both defendants, for which let execution issue.

It is further ordered that Johnson shall be granted a judgment in the amount of $14,750 against Dubner, for which let execution issue.